## IN THE MATTER OF J. N. KAPAHU.

CONTESTED ELECTION. BEFORE JUDD, C.J. At Waiohinu, Hawaii.

DECISION RENDERED MARCH 24, 1892. NOT HITHERTO REPORTED.

A ballot should be rejected if the cross mark upon it is on the left hand side of the name of the candidate.

Persons registered at a meeting of the inspectors, held less than five days prior to the election, cannot lawfully vote.

The Minister of the Interior cannot, under Sec. 108, Subdiv. 9, of the Election Law of 1890, authorize inspectors to hold a meeting for registering voters less than five days prior to the election.

Under Sec. 87 of the Election Law, the court may annul elections for other causes than those mentioned in Sec. 84, for which the Legislature may declare a seat vacant.

An election, at which certain persons illegally registered voted, should be annulled if the result might have been different had such persons not voted; the court cannot, under the statute, require proof as to how these persons voted.

DECISION OF JUDD, C.J.

A sworn petition signed by J. Kauhane, J. W. Smithies, J. K. Naeole, J. C. Kaiewe, R. H. Kaonohi, Lapaela, Kapana, Kamaliikane, E. Awihi, Kaaua, Kepano, H. Kekoa, J. K. Kapaaua, P. K. Honolulu, S. Enaena, G. Kauwe, Kuaana, W. B. Kamaka, Kapakua, Aola, Kinilao, C. K. Kikaha, Imiola, Iaukea, J. Paku, Puhi, Kaahu, Kailioha, Kawaikapu, Hookana and 16 other residents of Kau, Island of Hawaii, persons who voted and were entitled to vote for representatives to the legislature from the Seventh Election District of the Island of Hawaii, to-wit, the Kau District, was filed in the office of the Clerk of the Supreme Court on the 29th day of February, 1892, this date being within thirty days following the general election held on the 3rd of

February, 1892. Sufficient costs were deposited by the peti-
tioners. The petition was addressed to me, and set out causes
why the election of J. N. Kapahu, the person who received a cer-
tificate of election as representative for the said district of Kau,
should be vacated. I set and appointed Thursday, the 24th
day of March, 1892, at 1 o'clock p.m. at the district court house
at Waiohinu, Kau, Island of Hawaii, the same being in the
judicial circuit where the election was contested, as the time and
place for hearing said petition. I caused written notices of the
same to be given to the inspectors of election of the two pre-
cincts in the said district more than fourteen days previous to
the said hearing, and to the candidate who had been returned
as representative for the district and whose seat was contested,
and also caused written notices of the same to be posted in the
said district.

At the time and place of the hearing, there appeared J. N.
Kapahu, whose election was contested, also T. P. Harris, chair-
man, Geo. Timoteo and J. W. Kuaimoku, the inspectors of elec-
tion for the First Precinct of said district of Kau, and G. S. Pat-
ten, chairman, L. R. Macomber and M. Malakaua, inspectors of
election for the Second Precinct of said district. Mr. J. N. Kap-
ahu contested the petition, and Mr. O. K. Apiki, the opposing
candidate, appeared in support and filed a brief of Thurston &
Frear. No other person made any opposition to the petition.
The petition was as follows:

(1) Petitioners allege that at the First Precinct of said dis-
trict at said election fifteen votes were cast for the said O. K.
Apiki, which the inspectors of election of said precinct refused
and failed to count, claiming that the same were illegal and con-
trary to law, because they were marked on the left hand side
of the name of O. K. Apiki. And petitioners admit that such
ballots were marked on the left hand side, but claim that they
are not therefore illegal, but that they are legal and that such
ballots should have been counted.

(2) That one Kaaipoalima, a non-resident of said Kau, did
register and vote at said election at the Second Precinct of said
district.

(3)   That the inspectors of election of the First Precinct of said district, contrary to law, held a meeting for the registration of voters in the said precinct on the 30th day of January, 1892, and then and there registered over 20 names of persons as voters for representative in said precinct, which persons so registered voted at said election.

(4)   That the inspectors of election of the Second Precinct of said district rejected one vote cast for the said O. K. Apiki, claiming that the cross was not opposite his name and was therefore illegal.   Petitioners claim that such cross was oppostte the name of said O. K. Apiki and should therefore have been counted.

Petitioners claim, (1st) that such meeting of said inspectors of said First Precinct, and registration of voters on said 30th day of January, was illegal, and that the said election is therefore void; and, (2d) that if all of the said votes for said O. K. Apiki rejected by the said inspectors had been counted, and the vote of said Kaaipoalima rejected, he would have received a majority of all the votes cast, and should have been elected.

Petitioners pray that the said alleged election of said J. N. Kapahu be declared void, and for such other and further relief as justice and equity and the circumstances of the case may require.

The first ground set forth in the petition was abandoned by the contestant, Mr. Apiki, and I am of opinion that it is unsound.   Section 64 of the election law requires that the voter shall mark a cross on *the right hand side* opposite the name of the candidate.   The ballots marked on the left hand side of the ballot were contrary to the law, and were properly rejected by the inspectors.

The only ground of the petition upon which evidence was taken was the third, to-wit, that the inspectors of election of the First Precinct of the said district illegally held a meeting for registration of voters on the 30th of January, 1892, and registered over twenty names of persons as voters for representative in said precinct, which persons voted at the election.

47

I found from the evidence that thirty and over of the peti-
tioners were entitled to vote at the said election for representa-
tive, and did vote; that O. K. Apiki received in the first precinct

Votes _____  43

And in the second precinct _____ 125
                                           ─────
            Total_____ 168

That J. N. Kapahu received in the first precinct__  51

And in the second precinct _____ 129
                                           ─────
            Total_____ 180

And that J. N. Kapahu received a majority of 12 votes over
those counted for O. K. Apiki.   I found from the evidence that
the inspectors of the first precinct, to wit, T. P. Harris, Geo.
Timoteo and J. W. Kuaimoku, held sessions of the board for
correcting the electoral roll by adding new names, etc., on the
20th, 21st and 23rd of January, and not having signed their cor-
rected electoral roll or voting list at their meeting of the 23rd,
they held another session on Saturday, the 30th of January,
1892, and added 14 new names to the said list or roll, to wit, W.
Cobb, Honokoa, Geo. Kaaua, Kahanamoku, Kamawai, Laimana,
W. H. Lentz, Jud. W. Manning, Wm. Mann, Nalehua, Nahinu,
Oulu, C. Viebran and Thos. Wills, and corrected the name of a
Portuguese to John Gomez Ernesto, who had been registered as
John Gomez.

I also found from the evidence that all the above named voted
for representative except Nalehua, who did not vote, making 14
in all who voted, having been registered on the 30th January.

I find as a matter of law that the meeting of the inspectors
for registering voters on the 30th January was illegal.   The 43d
section of the Act requires that the inspectors shall "not less than
five nor more than thirty days prior to the date of election" hold
the meetings, etc.   The date of election, as fixed by the Act, was
Wednesday, the 3d day of February.   The last day, therefore,
on which a meeting of the inspectors could be held and comply
with the law was the 28th day of January, 1892.

As Mr. Kapahu's majority over Mr. Apiki was 12, the votes of the fourteen persons illegally registered might have elected him. I am forbidden by section 89 of the Act to require proof as to how these persons voted, but as these illegal ballots might have affected the result, I deem it sufficient cause for declaring the election of J. N. Kapahu invalid.

The contestant of the petition, Mr. Kapahu, advanced as a demurrer that as none of the said inspectors had been convicted of any of the offenses enumerated in the Act which would subject them to punishment, the court had no jurisdiction to hear the petition. I overruled this objection, as also another one advanced by the contestant, that the petition alleged none of the grounds set out in the 84th section of the Act as causes for vacating the seat of a member, such as "death, resignation, becoming a cabinet minister, gross misconduct or neglect of the business, bribery," etc. I am of the opinion that section 84 of the Act assigns causes for which the legislature may declare a seat vacated, though some of them might also be grounds upon which the court also might act; but they are not exclusive of other causes. Section 87 on "annulling elections" (proceedings in court) prescribes that the petition shall set forth *any cause or causes* why an election shall be vacated. Such causes must be sufficient grounds in the judgment of the court for annulling an election or vacating a seat.

The inspectors showed the court printed "Instructions to Inspectors" from the Minister of the Interior, to the effect that they could hold a meeting for registering voters on the 30th of January, and Mr. Kapahu contended that, under section 108, subdivision 9, "the Minister of the Interior may add new instructions to these if he thinks it necessary or advisable," this instruction legally authorized a meeting on the 30th January. I held that where the statute was silent the Minister might "instruct," but a positive provision of the statute could not be annulled by a ministerial "instruction."

I therefore adjudge the election of J. N. Kapahu as representative for the District of Kau, Island of Hawaii, invalid, and his seat vacated.